[Nos. 20507-6-II; 20753-2-II.  Division Two.  August 1, 1997.]

THE STATE OF WASHINGTON, *Respondent*, v. TROY LEE GUY, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. JOEY ALLEN AMMONS, *Appellant*.

*Suzan L. Clark* and *Anderson & Clark*; and *James J. Sowder*, for appellants (appointed counsel for appeal).

*Arthur D. Curtis, Prosecuting Attorney*, and *Philip Myers* and *Mark E. Beam, Deputies*, for respondent.

SEINFELD, J. — The issue in these linked cases is whether a felon who violates a court order to report to partial confinement on a work crew may be held criminally

liable for escaping from "custody," within the meaning of RCW 9A.76.110 (first degree escape). Holding that a felon may escape custody by failing to be where the sentencing court ordered him to be, we affirm.

## FACTS

### State v. Ammons

The facts in both cases are undisputed.[1] In December 1995, the Clark County Superior Court sentenced Joey Allen Ammons to 30 days of partial confinement with the Clark County work crew. In early January 1996, Ammons met with a work crew official and signed a work crew agreement that required him to report to his work crew assignment no later than January 12, 1996, and, in the event of an unavoidable absence, to "immediately notify" corrections staff by calling a specified telephone number. The agreement also warned that "termination from the program will result in a return to court for further action, incarceration, . . . or a warrant for [his] arrest."

Ammons never reported to the work crew and never contacted corrections officials. On January 18, the work crew staff terminated him from the program. Several months later, he was arrested and convicted of first degree escape.

### State v. Guy

Troy Lee Guy pleaded guilty to forgery, and the court sentenced him to 150 days' confinement, 30 of which were to be served on a work crew. During the sentencing hearing, the court emphasized that work crew was "just like being in jail because if you don't show up for work crew, you're considered to have escaped from custody." Guy indicated that he understood.

---

[1]The appellants raised their claims in two separate appeals, which this court heard as linked cases. Given that the fact patterns and legal issues are substantially the same, we address the appellants' arguments in a single opinion.

The day after he was released from total confinement, Guy attended a work crew intake and orientation session where, like Ammons, he signed an agreement setting forth the rules of the program, the date he was to report, and the telephone number to call if he could not attend.

Like Ammons, Guy never reported to work crew and made no attempts to advise anyone of his decision not to report. Similarly, Guy was terminated from the program, arrested, and ultimately convicted of first degree escape. At sentencing, the court converted Guy's work crew sentence to 30 days of total confinement and imposed a 24-month term for the escape conviction.

On appeal, Guy and Ammons both argue that their failure to report to work crew did not constitute an "escape from custody" within the meaning of RCW 9A.76.110(1) and that their convictions violated their right to equal protection. Guy also argues that his 24-month sentence for escape and the conversion of his work crew sentence to 30 days of total confinement violated the constitutional proscription against double jeopardy.

### Escape

To be convicted of first degree escape one must, while being detained for a felony conviction, "*escape[ ] from custody.*" RCW 9A.76.110(1) (emphasis added). The statutory definition of custody includes "any period of service on a work crew." RCW 9A.76.010(1). Thus, there is no question that Ammons and Guy could be held liable for escape had they reported to their work crews and then walked away.

But Ammons and Guy argue that they never reported to work crew and, thus, were not in the State's custody at the time of their failure to report. Consequently, they argue that they cannot be liable for escape within the meaning of RCW 9A.76.110. As evidence that they were not in custody, they point to the fact that they did not receive credit toward their sentences for the time preceding their reporting dates.

██ ██ This case turns on the meaning of the phrase, "escapes from custody." We reviewed this phrase in *State v. Kent*, 62 Wn. App. 458, 814 P.2d 1195 (1991). *Kent* involved two misdemeanants charged with second degree escape: one of the misdemeanants failed to return to jail from a medical furlough; the other failed to return from work release. The lower court had dismissed the charges, concluding "that the term 'escape' requires 'some actual physical leaving of confinement without permission.' " *Kent*, 62 Wn. App. at 459. This court reversed, holding that to escape "one need not run or flee from custody; . . . one need only be where he or she is not supposed to be or fail to be where he or she is supposed to be." *Kent*, 62 Wn. App. at 461.

Here, Guy and Ammons both were sentenced to a period of service on a work crew. Both met with work crew officials and signed an agreement setting forth the terms of their work crew sentence. Neither reported at the time or place where their sentence was to commence. And there is no indication that either man attempted to notify the work crew supervisor that he would be absent.

We find no reason to define "escapes from custody," as used in the first degree escape statute, differently from the way the *Kent* court defined it in regard to the second degree escape statute. Further, based upon RCW 9A.76.010(1), we conclude that the *Kent* rationale is as applicable to a period of service on a work crew as it is to jail confinement.

Guy and Ammons argue that *Kent* is distinguishable because the appellants in that case presumably were receiving credit for time served while outside the prison on furlough and work release and, thus, were in custody. By contrast, Guy and Ammons did not receive credit for time served for the period immediately before their work release sentences commenced and, arguably, were not in custody.

The *Kent* analysis, however, hinges on the offender's legal obligation to be in custody by being physically pres-

ent at a particular time and place. It does not turn on the offender's custody status preceding the ordered custody date. Thus, Guy's and Ammons's custody status immediately before the commencement of their work release sentences is not relevant.

## EQUAL PROTECTION

Guy and Ammons also assert that their sentences violate their right to equal protection. They argue that offenders sentenced to community service are similarly situated to offenders who are sentenced to work crew, but that those ordered to perform community service receive favored treatment because they are not subject to prosecution for escape if they fail to fulfill their community service obligation. Although neither Guy nor Ammons cite authority for this proposition, for purposes of this opinion we assume, without deciding, that a failure to satisfy community service obligations does not constitute escape.

Guy and Ammons concede that the rational relationship standard of review is appropriate here. This means that we must uphold the legislative classification "unless it rests on grounds wholly irrelevant to achievement of legitimate state objectives." *State v. Shawn P.*, 122 Wn.2d 553, 561, 859 P.2d 1220 (1993). A classification based upon legitimate differences that have a fair and substantial relationship to the statute's purpose does not violate equal protection guarantees. *State v. Danis*, 64 Wn. App. 814, 821, 826 P.2d 1096 (1992).

A claimant asserting an equal protection violation must prove that individuals within the two groups are similarly situated with respect to the purposes of the statute. *In re Knapp*, 102 Wn.2d 466, 473, 687 P.2d 1145 (1984). Because statutes are presumed constitutional, the party making an equal protection challenge bears the heavy burden of proving that the statute is unconstitutional. *Danis,* 64 Wn. App. at 820.

Both the work crew and community service statutes of-

fer an alternative to total confinement. RCW 9.94A.010, .030(6), .135, .380. But the statutes establish programs with different requirements, purposes, and State oversight.

Work crew is a form of partial confinement.[2] RCW 9.94A.030(26). To participate in the program, an offender agrees to abstain from the use of alcohol and controlled substances and submit to urinalyses and breathalyzer monitoring. The offender must also comply with program requirements that he work to the best of his ability and provide "accurate verified residence information." RCW 9.94A.135, .180. In addition, the work crew participant must work at least 35 hours per week. RCW 9.94A.030(39). Obviously, this program requires strict compliance by the offender and strict monitoring by the State to ensure compliance.

■ Community service, on the other hand, is "compulsory service, without compensation, performed for the benefit of the community by the offender." RCW 9.94A.030(6). Only nonviolent offenders are eligible and the length of their community service sentence is limited to 30 days. RCW 9.94A.380. By definition, community service involves work in the community with various agencies. *See, e.g.,* RCW 72.09.260 (requirements for community service litter cleanup programs). Consequently, this less structured program is less intrusive for the offender and may require less State oversight than a work crew program. Because of the above described differences in the

---

[2]RCW 9.94A.030(39) defines work crew as:

[A] program of partial confinement consisting of civic improvement tasks for the benefit of the community of not less than thirty-five hours per week that complies with RCW 9.94A.135. The civic improvement tasks shall have minimal negative impact on existing private industries or the labor force in the county where the service or labor is performed. The civic improvement tasks shall not affect employment opportunities for people with developmental disabilities contracted through sheltered workshops as defined in RCW 82.04.385. Only those offenders sentenced to a facility operated or utilized under contract by a county or the state are eligible to participate on a work crew. Offenders sentenced for a sex offense . . . are not eligible for the work crew program.

two programs, there is a rational and legitimate reason for imposing more severe penalties on offenders who violate the work crew terms of their sentence than on those who violate community service requirements.

Further, Guy's reliance on *State v. Hall*, 104 Wn.2d 486, 706 P.2d 1074 (1985), is misplaced. There, the court overturned escape statutes in which the standard of culpability necessary to convict varied according to whether the offender was classified as a state or a non-state prisoner. *Hall*, 104 Wn.2d at 492. In reaching its conclusion that this statutory scheme violated equal protection, the court necessarily recognized that the two groups of prisoners were similarly situated—a conclusion not supportable here. Consequently, we find no equal protection violation.

## DOUBLE JEOPARDY

Separately, Guy claims that the lower court violated the guarantee against double jeopardy when it convicted him of escape and required him to serve additional time for a probation violation. Specifically, he argues that he received double punishment for the same criminal act, i.e., failing to report to the work crew.

The Fifth Amendment's double jeopardy clause is enforceable against the states through the due process clause of the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969). Article I, § 9, the state constitution's double jeopardy clause, is coterminous with the Fifth Amendment double jeopardy clause. *State v. Gocken*, 127 Wn.2d 95, 107, 896 P.2d 1267 (1995). Both bar multiple punishments for the "same offense." *Brown v. Ohio*, 432 U.S. 161, 165, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977).

Here, the sentencing court's conversion of Guy's 30-day work crew sentence to total confinement was not a new sentence, but a continuing consequence of his earlier prosecution for forgery. *State v. Dupard*, 93 Wn.2d 268,

276, 609 P.2d 961 (1980). Double jeopardy is not implicated where the State prosecutes a defendant for an action constituting a new offense that also serves as the basis for the enforcement of the previous sentence. *See United States v. Soto-Olivas*, 44 F.3d 788, 789 (9th Cir.), *cert. denied*, 515 U.S. 1127 (1995) (double jeopardy not implicated where defendant's action served both as basis for probation revocation and for new offense.) The converted sentence is not punishment for the later events, but represents the punishment owed for the earlier crime. *See Standlee v. Smith*, 83 Wn.2d 405, 407, 518 P.2d 721 (1974) (revocation of parole is not part of a criminal prosecution and is not punishment for subsequent events that evince the parole violation). As such, the action that gave rise to the community supervision violation may also support a separate crime without invoking double jeopardy concerns.

We affirm.

BRIDGEWATER, A.C.J., and MORGAN, J., concur.

Review granted at 134 Wn.2d 1001 (1998).