963 P.2d 812 (1998)
136 Wash.2d 453
STATE of Washington, Respondent,
v.
Joey Allen AMMONS, Petitioner.
STATE of Washington, Respondent,
v.
Troy Lee GUY, Petitioner.
No. 65899-4.
Supreme Court of Washington, En Banc.
Argued May 26, 1998.
Decided September 24, 1998.
James Sowder, Vancouver, for Petitioner Ammons.
Anderson & Clark, Suzan L. Clark, Vancouver, for Petitioner Guy.
Arthur Curtis, Clark County Prosecutor, Mark Beam and Philip A. Meyers, Deputy Clark County Prosecutors, Vancouver, for Respondent.
GUY, Justice.
The question before us in these two consolidated cases is whether convicted felons who knowingly fail to appear to serve their sentences on a work crew can be found guilty of the crime of escape under the Washington statute defining that crime.

Joey Ammons
In December 1995, Joey Ammons was convicted of a felony. He was sentenced to 33 days, given 3 days for time served, and ordered to serve the remaining 30 days in a Washington work crew program. On January *813 4, 1996, Mr. Ammons signed an agreement in which he agreed to report for work crew no later than January 12, 1996. The agreement provided that if an absence from work crew cannot be avoided, the defendant must notify the work site supervisor immediately. Mr. Ammons failed to report for work crew on January 12 or thereafter and failed to contact the program. Mr. Ammons was subsequently arrested and charged with escape in the first degree, RCW 9A.76.110.
Mr. Ammons was convicted on stipulated facts. In its Findings of Fact and Conclusions of Law, the trial court concluded that: On January 12, 1996, the defendant, having been convicted of a felony, was serving a 30-day partial confinement sentence in the Clark County work crew program; his failure to report was willful; and the failure to appear constituted an escape from custody as defined in RCW 9A.76.010(1). Mr. Ammons appealed and the Court of Appeals affirmed the conviction. State v. Ammons, 87 Wash. App. 238, 941 P.2d 674 (1997).

Troy Lee Guy
In April 1995, Troy Guy was convicted of a felony. He was sentenced to 150 days, with 120 days to be served in total confinement and 30 days to be served in partial confinement in a work crew program. At his sentencing, the judge informed Mr. Guy that work crew was just like being in jail and that if he didn't show up for work crew, he would be considered to have escaped from custody.[1] After finishing his term of total confinement, Mr. Guy reported to a work crew orientation session. He agreed to report on August 1, 1995, to begin his work crew obligation. He failed to report for work crew and failed to make contact with the work crew program. He was subsequently convicted by a jury of escape in the first degree in violation of RCW 9A.76.110. The Court of Appeals upheld the conviction in a consolidated appeal with Mr. Ammons' appeal. We accepted discretionary review, limiting our review to the statutory escape issue. Both Mr. Ammons and Mr. Guy argue that failure to report for work crew does not constitute an escape from custody within the meaning of RCW 9A.76.110(1).
The only issue before us is whether the failure of a convicted felon to report to serve a sentence in a work crew program can constitute the crime of escape within the meaning of RCW 9A.76.110.
The construction of a statute is a question of law which is reviewed de novo. Hanson v. City of Snohomish, 121 Wash.2d 552, 556, 852 P.2d 295 (1993).
In 1991, the Legislature amended the Sentencing Reform Act of 1981 (SRA) and the escape statute in the same legislation. Laws of 1991, ch. 181. In that bill, the Legislature added "work crew"[2] (or a combination of work crew with home detention) as a way to serve a sentence. That same legislation also amended the escape statute and added "any period of service on a work crew" to the definition of "custody." Laws of 1991, ch. 181, §§ 2, 3(17), 6.
The first degree escape statute, RCW 9A.76.110(1), provides in relevant part:
A person is guilty of escape in the first degree if, being detained pursuant to a conviction of a felony ... he escapes from custody or a detention facility.[[3]]
The escape statute defines "custody":
"Custody" means restraint pursuant to a lawful arrest or an order of a court, or any period of service on a work crew....
RCW 9A.76.010(1).
Under the escape statute, "custody" can be either (1) restraint pursuant to an *814 order of a court or (2) any period of service on a work crew. Under either definition, Mr. Ammons and Mr. Guy were in custody. The escape statute does not define the term "restraint." The dictionary defines restraint as "1 a: an act of restraining, hindering, checking, or holding back from some activity or expression ... b: a means, force, or agency that restrains, checks free activity, or otherwise controls." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1937 (1986). The judgments and sentences which ordered the defendants to serve 30 days on work crew were restraints on the defendants' liberty.
The defendants were also in custody under the alternative definition of custody in RCW 9A.76.010(1); custody means any period of service on a work crew. The parties agree that if the defendants had failed to return to work crew after reporting for the first day, or the first hour, they would have been guilty of first degree escape. However, the defendants argue that since they never reported for work crew at all on the date they were due, they were not yet in the State's "custody" at the time of their failure to report and therefore cannot be liable for escape within the meaning of the statute. We disagree. Such reasoning could have the absurd consequence of finding a defendant who worked for a part of his or her work crew sentence and then failed to return guilty of the crime of escape, but finding a defendant who never showed up at all not guilty. This court will not construe statutes in a way that leads to unlikely, absurd, or strained results. E.g., Double D Hop Ranch v. Sanchez, 133 Wash.2d 793, 799, 947 P.2d 727 (1997), 952 P.2d 590 (1998).
To support their argument, defendants Ammons and Guy point out that they were not receiving credit toward their sentences for the time preceding their reporting date. No one alleges they were (or should have been) receiving credit for the days between their time in jail and the date they were to report to the work crew. Rather, the State argues that whether they were in custody before their reporting date is irrelevant because as of the date they were to have reported, they were restrained pursuant to an order of court and, additionally, in custody because "custody" includes any "period of service on a work crew." RCW 9A.76.010(1). The State argues that the defendants' partial confinement in work crew, and thus their status as "in custody," did not commence until the time they were required to report to the work crew. After that date, the State argues, they were guilty of the crime of escape under RCW 9A.76. We agree.
In affirming the escape convictions of defendants Ammons and Guy, the Court of Appeals relied on State v. Kent, 62 Wash. App. 458, 814 P.2d 1195 (1991). The court reasoned that the analysis hinges on the offender's legal obligation to be in custody by being physically present at a particular time and place; it does not turn on the offender's custody status preceding the ordered custody day. The court concluded that the defendants' custody status immediately before the commencement of their work release sentences was not relevant. Ammons, 87 Wash. App. at 243-44, 941 P.2d 674. In Kent, two defendants serving sentences for misdemeanors were charged with second degree escape[4] after they failed to return to jail on time from work release and medical furlough. The trial court dismissed the charges, finding that the term "escape" requires some actual physical leaving of confinement without permission and that because the defendants left jail with permission, they could not have escaped. The Court of Appeals reversed, rejecting the defendants' contention that they could not be guilty of escape because they were not under direct physical control or custody and because they did not run or *815 flee from their place of confinement. The Court of Appeals held that the defendants departed from the limits of their custody without permission by not returning to the facilities and that nothing in the statute suggests that an escape only occurs when one is subject to direct physical control. Kent, 62 Wash.App. at 461, 814 P.2d 1195. See also State v. Johnson, 66 Wash.App. 297, 301 n. 3, 831 P.2d 1137 (1992); State v. Peters, 35 Wash.App. 427, 667 P.2d 136 (1983).
The Court of Appeals has also held that a defendant's unauthorized absence from a home detention program was sufficient to support a conviction for first degree escape, as home detention was a detention facility for purposes of the escape statute. State v. Parker, 76 Wash.App. 747, 888 P.2d 167 (1995). Both home detention and work crew are defined as "partial confinement" by the SRA. RCW 9.94A.030(26). We held in State v. Speaks, 119 Wash.2d 204, 829 P.2d 1096 (1992), that credit must be given for time served in home detention prior to sentencing because home detention is confinement under the SRA.
A Ninth Circuit case supports the State's position and the Court of Appeals conclusion in the present case. In United States v. Keller, 912 F.2d 1058 (9th Cir.1990), Keller was serving a term of probation for a misdemeanor. He violated the terms of his probation and the court revoked his probation. The court then imposed a sentence of imprisonment but allowed Keller two weeks before he had to report to his place of confinement. Keller failed to report on the appointed date that his sentence was to begin, and he was subsequently convicted of escape in violation of federal law. Keller argued that he was never in "custody" and consequently could not have escaped from custody within the meaning of the statute, which provided for the punishment of anyone who escapes from custody or from any institution in which he is confined. As Ammons and Guy argue in the present case, Keller's argument was that the statute contemplates an escape from custody, and that it is not possible to escape from custody if one was never in custody. Keller, 912 F.2d at 1059. The Ninth Circuit concluded that while reasonable minds could differ over the question whether Keller was in custody between the date of his sentencing and the date he was to report to jail, it need not decide that question because there was no doubt that he was effectively ordered into custody on a set date, and after that date he was an escapee. The court therefore concluded that Keller escaped when he failed to report to serve his sentence. See also United States v. Overaker, 766 F.2d 1326 (9th Cir.1985).
We conclude defendants Ammons and Guy were in custody on the date they were to report to work crew both because they were in restraint pursuant to an order of the court and because custody includes any period of service on a work crew. Since "custody" means restraint pursuant to an order of a court or any period of service on a work crew, the defendants were guilty of escape after they failed to appear to serve their sentences. We affirm the Court of Appeals.
DURHAM, C.J., and DOLLIVER, SMITH, ALEXANDER and TALMADGE, JJ., concur.
MADSEN, Justice, dissenting.
A conviction of escape in the first degree requires that the escapee is "being detained pursuant to a conviction of a felony" at the time of the escape. RCW 9A.76.110(1). A person who has not yet reported to a work crew is not being detained. Accordingly, I would hold that the failure to report to a work crew is not escape in the first degree. Moreover, the plain reading of the statute serves legislative policy by distinguishing those cases where a person actually escapes from a work crew, and thereby deserves a harsh penalty, from cases where a person has not reported to a work crew and whose conduct is less culpable.
RCW 9A.76.110(1) provides that "[a] person is guilty of escape in the first degree if, being detained pursuant to a conviction of a felony ... he escapes from custody or a detention facility." (Emphasis added.) Regardless of how "custody" is specifically defined in RCW 9A.76.010(1), first degree escape does not occur unless the defendant is being detained. "Detained" is not defined in *816 the statute. Absent a specific statutory definition, words in a statute are given their common law or ordinary meaning and a nontechnical term may be given its dictionary definition. State v. Chester, 133 Wash.2d 15, 22, 940 P.2d 1374 (1997). "Detain" means "[t]o arrest, to check, to delay, to hinder, to hold, or keep in custody, to retard, to restrain from proceeding, to stay, to stop, to withhold." Black's Law Dictionary 449 (6th ed.1990). It is defined as "to hold or keep in or as if in custody" as by the police for questioning, and "to restrain esp. from proceeding: hold back: STOP, DELAY...." Webster's Third New International Dictionary 616 (1993). Thus, aside from whether a person is in "custody," which includes restraint pursuant to a court order or service on a work crew, RCW 9A.76.010(1), that person must at the time of the escape be under some restriction as to their ability to move about freely. This is also in line with the common understanding of escape.
The few cases that have addressed the issue of whether, under RCW 9A.76.110, a person was being detained pursuant to a felony conviction have all involved circumstances where the defendant was actually being detained within the contemplation of the common definitions of "detain." Although the focus has generally been on whether the detention was pursuant to a felony, rather than simply upon whether the defendant was being detained, the cases are nevertheless illuminating. In State v. Snyder, 40 Wash.App. 338, 698 P.2d 597 (1985), the defendants escaped from a corrections center. In State v. Bryant, 25 Wash.App. 635, 608 P.2d 1261 (1980), the defendant removed himself from the physical restraint of a deputy sheriff after the trial court revoked his probation and pronounced judgment and sentence reimposing a prior suspended sentence on a grand larceny conviction based upon defendant's guilty plea. In State v. Perencevic, 54 Wash.App. 585, 774 P.2d 558 (1989), the defendant was convicted of attempted first degree escape based upon a nearly successful effort at digging through the wall of a jail TV room. In each of these cases the defendants were being detained within the common understanding of the termin a correctional facility, a jail, or within the control of a law enforcement officer.
In State v. Solis, 38 Wash.App. 484, 685 P.2d 672 (1984), a police officer located the defendant and informed him of a warrant for arrest which had been issued upon suspension of the defendant's parole. The defendant broke free of the officer's grasp and ran away. The court held that when a parolee's parole is suspended, the parolee resumes the status of being detained pursuant to the conviction for which he was paroled. The Court of Appeals said: "The suspension of his parole effectively reinstated his prior felony conviction and upon arrest he would have been held pursuant to the conviction...." Id. at 486, 685 P.2d 672 (emphasis added). Thus, not only was the defendant being detained as commonly understoodhe broke free of an arresting officer's graspthe court also specifically noted that detention would occur upon arrest.
Cases cited by the majority are not to the contrary. Several do not concern first degree escape. In State v. Kent, 62 Wash.App. 458, 814 P.2d 1195 (1991), the offender was convicted of second degree escape. Second degree escape does not require that the offender is being detained pursuant to a felony conviction at the time of the escape. Compare RCW 9A.76.120 with RCW 9A.76.110. State v. Peters, 35 Wash.App. 427, 667 P.2d 136 (1983) also involved second degree escape. State v. Johnson, 66 Wash.App. 297, 301 n. 3, 831 P.2d 1137 (1992) likewise pertains to second degree escape.
Although uncertain, other cases appear to be cited by the majority for the proposition that home detention and work crew are sufficiently alike, because both involve partial confinement, that a case holding that first degree escape can be based upon escape from home detention supports the majority's position here. Majority at 814-15. The court in that case, State v. Parker, 76 Wash. App. 747, 888 P.2d 167 (1995), reasoned that home detention is a detention facility for purposes of first degree escape from a detention facility. However, escape from a detention facility is not at issue in this case. Moreover, Parker is consistent with the principle *817 that first degree escape requires that the escape occur while the offender is being detained, because the offender there was confined in a private residence subject to electronic surveillance.
Likewise, the majority's reliance on the Ninth Circuit's decision in United States v. Keller, 912 F.2d 1058 (9th Cir.1990) is misplaced. The issue there was whether a failure to report to begin a sentence of imprisonment was escape from custody, with the court holding that it was. What the majority here overlooks is the fact that the federal escape statutes at issue in Keller do not require that the escape occur while the offender is being detained. See 18 U.S.C. §§ 751(a), 4082(a). Instead, the question was whether the offender escaped from custody, or whether he had never been in custody and thus could not escape from custody. United States v. Overaker, 766 F.2d 1326 (9th Cir. 1985) also involved 18 U.S.C. § 751.
The majority cites no statutory language, controlling precedent, or persuasive authority for the principle that under RCW 9A.76.110 a person who is not actually "being detained" can be found guilty of first degree escape. Although the defendants in these two cases were not being detained at the time of their alleged escapes, the majority nevertheless concludes that each escaped, either from service on a work crew or from custody, specifically, from the restraint of a court order. See RCW 9A.76.110.
"`Work crew' means a program of partial confinement consisting of civic improvement tasks for the benefit of the community of not less than thirty-five hours per week...." RCW 9.94A.030(39). Offenders participating in a work crew are supervised. See RCW 9.94A.135. Thus, once an offender reports to a work crew he or she is under supervision in a program of partial confinement, i.e., circumstances within the commonly understood definitions of "being detained." Therefore, when one escapes from a work crew after reporting to serve, he or she is being detained at the time of the escape. However, when an offender has not yet reported to a work crew, he or she is not being detained, and therefore the offender's failure to appear is not encompassed within the first degree escape statute.
Where escape is charged as escape from custody, which is the restraint of a court order, the alleged escape must still occur while the offender is "being detained." RCW 9A.76.110. Even if a court order requiring one to report to a work crew program is an order restraining an offender for the period of time the offender is supposed to serve on the work crew, as the majority holds, and thus constitutes "custody" for that time period, such a conclusion does not answer the question whether, at the time of the alleged escape, the offender is "being detained."[1] Again, until the offender actually reports to serve, he or she is not being detained. I would hold that under the plain language of RCW 9A.76.110, neither defendant in these two cases was "being detained" at the time of the alleged escapes, and therefore they cannot be found guilty of escape in the first degree.
This plain reading of the statute furthers sound policy. When the Legislature defined escape from a work crew as escape in the first degree, a class B felony, it subjected offenders who escape from work crews to harsh penalties. Unlike the case where a defendant is held in jail and there are many deterrents to escape, the penalty for escape from a work crew is the primary deterrent to escape. Thus, the Legislature had good reason to include escape from a work crew as first degree escape. RCW 9A.76.110 embodies a strong deterrent to those who may consider walking away from programs which impose civic improvement tasks for the benefit of the community, see RCW 9.94A.030(39) and RCW 9.94A.135, as well as less restrictive confinement options for the offender with presumably less cost than incarceration.
Because the penalty is justifiably harsh, however, it is important to keep in mind what work crew service entails. Once an offender reports for service, the offender is on his or her honor to meet the responsibilities associated *818 with that service. These offenders are out in the community, not behind locked bars. Thus, success of such a program relies heavily on voluntary cooperation. An offender who fails to satisfy the "honor system" inherent in work crew service must suffer the consequence of that failure.
However, before an offender reports to a work crew, the responsibilities of complying with all the requirements of the program have not begun. The importance of complying with those responsibilities is impressed upon the offender when the partial confinement of work crew service actually begins. I do not suggest that the failure to report to a work crew can or should be excused. But, because the offender is not being detained his failure to appear is not a violation of the honor system which is crucial to management of work crew service. Thus, while not to be condoned, failure to appear to begin work crew is less culpable because it does not strike at the very heart of a less restrictive sentencing alternative.
Although in a different context, this court has previously recognized that degree of culpability has been a factor in legislative determinations of what constitutes escape where escape other than from total confinement is involved. In State v. Danforth, 97 Wash.2d 255, 643 P.2d 882 (1982), the court held that work release inmates who failed to return to a work release program could not be prosecuted under RCW 9A.76.110, but instead had to be prosecuted under RCW 72.65.070. The court reasoned that while the statutes were concurrent, the special law, RCW 72.65.070, rather than the general law, RCW 9A.76.110, applied, and further, that this approach was required to give effect to RCW 72.65.070. Danforth, 97 Wash.2d at 257-58, 643 P.2d 882. Most relevant here, the court also reasoned that RCW 72.65.070 specifically required that the defendant's conduct be willful and this requirement recognized a valid legislative distinction between going over a prison wall and not returning to a specified place of custody. Danforth, 97 Wash.2d at 258, 643 P.2d 882.
This case involves failure to report to work crew programs, not failure to return to work release programs. Nonetheless, similar to its reasoning in Danforth, the court should recognize that there is a basis for the Legislature's plain requirement that even in the case of escape from a work crew or from restraint pursuant to a court order to serve a period of time in a work crew program, the escape must occur while the person is being detained. Only in such circumstances is the conduct sufficiently culpable to warrant the severity of the punishment which may be imposed for first degree escape.
Finally, offenders who fail to report to a work crew program as ordered are subject to sanctions, though not those for first degree escape, and therefore, offenders who fail to report for work crew services will suffer consequences of that failure. RCW 9.94A.200 provides that if an offender violates any condition or requirement of a sentence, the court can modify its order of judgment and sentence. Among other things, a court may order an offender to be confined for up to sixty days for a violation or convert a term of partial confinement to total confinement. RCW 9.94A.200(3)(c).
I would reverse the Court of Appeals.
SANDERS and JOHNSON, JJ., concur.
NOTES
[1] This Court takes note that in some counties at sentencing and in some work crew orientation sessions, it is the practice to give a warning to defendants ordered to serve time on a work crew that failure to appear or to serve the sentence on the work crew may result in prosecution for the crime of escape. While we do not mandate such a practice, we approve of the procedure and encourage the continuation of giving such warnings as a way to put work crew participants on notice of the consequences of their actions under existing state statutes.
[2] "Work crew" means a program of partial confinement consisting of civic improvement tasks for the benefit of the community of not less than 35 hours per week that complies with RCW 9.94A. 135. RCW 9.94A.030(39).
[3] In order to convict a defendant of first degree escape under RCW 9A.76.110, the State must prove that the defendant knew his or her actions would result in leaving confinement without permission. State v. Danforth, 97 Wash.2d 255, 258-59, 643 P.2d 882 (1982); State v. Christian, 44 Wash.App. 764, 771, 723 P.2d 508 (1986). The court's instructions in Mr. Guy's case contained this element in the "to convict" instruction. The judge in Mr. Ammons' case found that his failure to appear was willful, which is a higher mental intent requirement than knowledge. Danforth, 97 Wash.2d at 258-59, 643 P.2d 882; State v. Hall, 104 Wash.2d 486, 493, 706 P.2d 1074 (1985).
[4] First degree escape requires a prior felony conviction; second degree does not. RCW 9A.76.110; 9A.76.120.
[1] Under the majority's analysis, every postconviction failure to appear as required by a court order would be converted into an escape.