

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 36699-5-III |
| Respondent, | ) | (Consolidated with |
| | ) | No. 36700-2-III) |
| v. | ) | |
| | ) | |
| DAVID RAYMOND MULLINS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — David Mullins appeals from multiple convictions, but challenges only one of them in this action—his conviction for first degree escape. We reverse that conviction due to a defective charging document and remand to the trial court for further proceedings.

## FACTS

Officer Michael Welch of the Colville Police Department arrested Mr. Mullins October 8, 2018, on the basis of two outstanding arrest warrants and probable cause to believe he had engaged in vehicle theft. One warrant was for a forgery conviction that still awaited sentencing. Welch transported Mullins to the Stevens County jail. Corrections Deputy Billy Reece took Mullins to Interview Room 1 in the booking area. Unable to book Mullins immediately because the deputies were feeding and providing

medication to the other inmates, Reece secured him in the interview room and gave him a meal before returning to the other prisoners.

Shortly thereafter, Mullins was observed coming down a stairwell and was taken back to the interview room and once again secured therein. Once again, Mullins was able to open the door and leave.[1] He again was apprehended in the building and discovered to be in possession of personal items belonging to one of the jailers.[2] He was placed in a different room in the booking area and then transported to the hospital upon alleging a medical need to visit the facility. He was returned to the jail and ultimately booked in to the facility shortly after midnight.

The prosecutor charged one count of first degree escape in the following manner:

> David Raymond Mullins in the County of Stevens, State of Washington, on or about October 8, 2018, then and there, while being detained pursuant to a conviction for Forgery, did escape from the [sic] custody.

Clerk's Papers (CP) at 72. The charge was ultimately tried to the bench. The court convicted Mr. Mullins of first degree escape, finding that he was not an inmate of the jail, but did escape the custody of corrections officers by leaving the secured room in which he had been confined. CP at 77.

Mr. Mullins timely appealed to this court. A panel conducted video argument of the appeal.

---

[1] The deputies discovered that Mullins had used the "spork" provided with the meal to open the door.

[2] Portions of the incident were captured on a video that was played at trial.

No. 36699-5-III (consol. with 36700-2-III)
*State v. Mullins*

ANALYSIS

Mr. Mullins argues that both the evidence and the charging document were insufficient. He also argues that the offender score was inappropriately calculated. Having granted relief on that latter ground in a companion case, *State v. Mullins*, No. 36410-1-III (Wash. Ct. App. May 14, 2020) (unpublished), http://www.courts.wa.gov /opinions/pdf/364101_unp.pdf, and with resentencing required here, we need not further discuss the proof of prior conviction argument.

We consider first the sufficiency of the evidence contention before turning to the sufficiency of the charging document.

*Sufficiency of the Evidence*

Mr. Mullins argues that because he never left the jail building, there was insufficient evidence that he escaped "custody" or that he escaped from a "detention facility." We disagree. Since there was no allegation that he escaped a detention facility and that was not the theory of escape found by the trial judge, we need not discuss that particular theory except to the extent it overlaps with the charged theory of the case.

Review of the sufficiency of the evidence from a bench trial is conducted under well settled standards. Evidence is sufficient to support a verdict if the trier-of-fact has a factual basis for finding each element of the offense proved beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Green*, 94 Wn.2d 216, 221-222, 616 P.2d 628 (1980). The evidence is viewed in the light most

3

favorable to the prosecution. *Green*, 94 Wn.2d at 221. Appellate courts defer to the trier-of-fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

In bench trials, "appellate review is limited to determining whether substantial evidence supports the findings of fact and, if so, whether the findings support the conclusions of law." *State v. Homan*, 181 Wn.2d 102, 105-106, 330 P.3d 182 (2014). "'Substantial evidence' is evidence sufficient to persuade a fair-minded person of the truth of the asserted premise." *Id*. at 106.

A person commits first degree escape if he "knowingly escapes from custody or a detention facility while being detained pursuant to a conviction of a felony." RCW 9A.76.110(1). This statute was adopted by Laws of 2001, ch. 264, § 1. Prior to that amendment, the offense was committed when a person "detained pursuant to a conviction of a felony" "escapes from custody or a detention facility." LAWS OF 1982, 1st Ex. Sess., ch. 47, § 23.

By comparison, second degree escape involves escape from a detention facility without regard for the reason for incarceration. RCW 9A.76.120(1)(a). However, any escape from custody when held for a felony offense also constitutes second degree escape. RCW 9A.76.120(1)(b). Third degree escape is any other escape from custody. RCW 9A.76.130. Thus, while the location and reason for custody may matter for the inferior degrees of escape, it is not relevant for first degree escape. The reason for the

custody—a felony conviction—distinguishes first degree escape from the other degrees of the offense. The location and nature of the custody are not relevant.

The term "custody" is defined as "restraint pursuant to a lawful arrest or an order of a court, or any period of service on a work crew." RCW 9A.76.010(2). In turn, "restraint" means an "'act of restraining, hindering, checking, or holding back from some activity or expression,'" or a "means, force, or agency that restrains, checks free activity, or otherwise controls." *State v. Ammons*, 136 Wn.2d 453, 457, 963 P.2d 812 (1998) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1937 (1986)).[3]

Mr. Mullins argues that because he never left the building, he remained both in the detention facility and in custody because only his location within the building changed. Br. of Appellant at 11. As noted previously, he was not charged with escaping the facility, so the only question before this court is whether he escaped custody when he repeatedly removed himself from the locked conference room in which the corrections officers attempted to secure him prior to booking him in to the jail.[4] We believe that to be the case. He was not in the location he was supposed to be in.

---

[3] A "detention facility" is "any place used for the confinement of a person (a) arrested for, charged with or convicted of an offense, or . . . (d) otherwise confined pursuant to an order of a court . . . or (e) in any work release, furlough, or other such facility or program." RCW 9A.76.010(3).

[4] Presumably he was not charged under the "detention facility" prong of the statute because he had not been formally booked into the jail. Whether someone escapes a detention facility when they are captured within the jail building, is not a question before us due to the charging decision.

No. 36699-5-III (consol. with 36700-2-III)
*State v. Mullins*

Informative are *State v. Gomez*, 152 Wn. App. 751, 754, 217 P.3d 391 (2009).

*Ammons*, and *State v. Breshon*, 115 Wn. App. 874, 63 P.3d 871 (2003). *Gomez* involved

a defendant who slipped out of handcuffs and left a booking room, and then the building.

The evidence was sufficient to show escape from a detention facility. 152 Wn. App. at

752-753. Mr. Gomez defended on the basis that he merely had escaped custody (third

degree escape) rather than a detention facility (second degree escape). *Id*. at 753.

Satisfied with the proof that the room constituted a detention facility, this court affirmed,

noting that Mr. Gomez should have remained in the room until the officer returned to

him. *Id*. at 754.

In *Ammons*, the defendants were convicted of first degree escape for failing to

report to a work crew; they defended on the basis that they were not in "custody" while at

work crew. 136 Wn.2d at 454-456. The court disagreed and determined that the

defendants were "in custody" both pursuant to a court order and by the assignment to the

work crew. *Id*. at 460. *Breshon* involved the question of whether defendants ordered to

report to a drug treatment facility were "in custody" despite a failure to report to the

facility. 115 Wn. App. at 876-877. Division Two of this court concluded that the

defendants were "in custody" pursuant to the court order to report to the treatment

facility. *Id*. at 878-879. *Breshon* discussed the *Ammons* holding:

> In any event, the majority did not require a detention separate from the
> restriction of freedom imposed by being in custody, even if that was
> custody from restraint arising from a court order. We, therefore, reject the

6

> argument that Breshon and Simmons were not detained because they were not at least partially confined.

*Id.*; *accord State v. Kent*, 62 Wn. App. 458, 461, 814 P.2d 1195 (1991) (failure to return to jail from work release or hospital visit constituted escape due to not being where one was supposed to be).

Also informative is *State v. Bryant*, 25 Wn. App. 635, 608 P.2d 1261 (1980). There the defendant fled a courtroom, evading an officer; he was chased through the hallways and down the stairs before being "dogged" to the ground by the chief criminal deputy prosecutor. *Id.* at 636-637. This court concluded that Mr. Bryant had escaped custody once "he removed himself from the Deputy Sheriff's physical restraint." *Id.* at 638. Likewise, a prisoner who ran from a courtroom upon being ordered into custody was guilty of escape in the first degree because the order had placed him in custody. *State v. Eichelberger*, 144 Wn. App. 61, 70-72, 180 P.3d 880 (2008).

Similarly here, Mr. Mullins was not where he was supposed to be, and therefore was outside the "custody" of the corrections staff to whom the Colville police had entrusted him, once he slipped the restraint of the conference room in which he had been placed. He was restrained in the physical custody of the officers due to placement in the secured room, and escaped their custody when he freed himself from that location. *Id.* He no longer was "restrained" where he had been left.

The evidence supported the bench verdict.

7

*Adequacy of Charging Document*

Mr. Mullins also alleges that the charging document is defective because it omitted the knowledge element. The State responds that we should impute knowledge from the word "escape." Mr. Mullins has the better argument.

Again, well settled standards govern our review. "All essential elements of a crime, statutory or otherwise, must be included in a charging document in order to afford notice to an accused of the nature and cause of the accusation against him." *State v. Kjorsvik*, 117 Wn.2d 93, 97, 812 P.2d 86 (1991). When challenged for the first time after a verdict has been returned, courts will liberally construe the document to see if the necessary facts can be found. If not, the charge will be dismissed without prejudice. Even if the charge is stated, a defendant who shows prejudice from "inartful" pleading also receives a dismissal of charges without prejudice. *Id*. at 105-106. The initial question to be answered is whether "the necessary facts appear in any form, or by fair construction can they be found, in the charging document." *Id*. at 105. The liberal construction standard for belated challenges is designed to discourage "sandbagging" by withholding a challenge that could otherwise be timely remedied. *Id*. at 103.

As dutifully noted by the prosecutor, our case law previously has concluded that a charging document omitting the knowledge element of escape is constitutionally defective. *State v. Brown*, 169 Wn.2d 195, 198, 234 P.3d 212 (2010). The State nonetheless argues

No. 36699-5-III (consol. with 36700-2-III)
*State v. Mullins*

that *Brown* did not consider its argument that the word "escape" necessarily conveys the concept of knowledge. We disagree that the argument requires a different result.

First, this court must follow the decisions of the Washington Supreme Court. *State v. Gore*, 101 Wn.2d 481, 486-487, 681 P.2d 227 (1984). If the State's new argument is to be considered, that court must do the considering. Second, the fact that the legislature expressly added the knowledge element to the existing statute in 1982 strongly indicates that knowledge was not implicit in the concept of escape. Prior to that amendment, the statute had employed "escapes" as a verb. If "escapes" already meant "knowingly escapes," there was no need for the 1982 amendment.

Even if we were not required to follow *Brown*, the State's argument is unconvincing in light of the statute's history. Accordingly, we reverse the escape conviction without prejudice to the State refiling the charge.

Reversed and remanded.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____          _____
Fearing, J.                                              Pennell, C.J.

9