[No. 50997–2. En Banc. September 26, 1985.]

THE STATE OF WASHINGTON, *Respondent,* v. GARY LEE HALL, *Appellant.*

*Ben Shafton* and *Morse & Bratt,* for appellant.

*Arthur D. Curtis, Prosecuting Attorney,* and *James D. Swanger* and *Darvin J. Zimmerman,* for respondent.

GOODLOE, J.—Gary Lee Hall pleaded guilty to possession of a controlled substance. He later was convicted by a jury of first degree escape. He appeals the trial court's decision not to allow withdrawal of his guilty plea due to the prosecutor's alleged breach of the plea bargain agreement, the

trial court's use of this prior conviction as a basis for the first degree escape charge, and the trial court's holding that the escape charge did not violate equal protection.

We hold that the prosecutor did not breach the plea bargain agreement and the prior conviction was properly used as an element for the first degree escape charge. However, we hold that the first degree escape charge violated Hall's right to equal protection and reverse. This decision makes it unnecessary to address Hall's other allegations of improper prosecutorial comment and improper judicial comment at the first degree escape trial and sentencing.

On February 16, 1982, the Clark County sheriff's department made numerous arrests of alleged members of a heroin conspiracy ring called the "Malaysian Connection". On that day with reporters and television cameras present, the sheriff's department arrested Hall for a controlled substance, heroin, violation. The media represented Hall to be a member of the "Malaysian Connection". Subsequent police investigation revealed that Hall had no involvement with the heroin ring.

The State and Hall began plea bargain negotiations. Hall agreed to plead guilty to possession of heroin, and the prosecutor agreed to make known to the press that "[Hall] had no connection with the conspiracy, possession, nor delivery of heroin relating to the other defendants in this case". Clerk's Papers, at 3. This agreement was listed in appellant's statement on plea of guilty. It was also discussed orally before the trial court when the court accepted Hall's plea of guilty on April 16, 1982.

On May 28, 1982, Hall was given a suspended sentence and placed in a work release program administered from Vancouver City Jail for a term of 6 months. Hall began the work release program on July 16, 1982.

On July 23, 1982, Hall appeared in court for entry of an order correcting a wrong charge placed on his sentence and obtained leave of the court to work on Saturdays. That same day, after being released for work, Hall failed to return to the jail. Hall surrendered himself in open court on

August 20, 1982. The prosecutor moved to revoke Hall's suspended sentence and charged Hall with first degree escape.

Articles published in the Vancouver Columbian on August 29, 1982, continued to link Hall to the "Malaysian Connection". The August 15, 1982 article was a followup article on the "Malaysian Connection" roundup and gave a status report on those arrested. Gary Lee Hall was included in the list. The August 19, 1982, article in the "courts" column discussed Hall's escape charge and specifically identified Hall as "one arrested last winter as part of what law enforcement officials called a Malaysian–connected heroin ring." Clerk's Papers, at 19.

Affidavits and a motion to withdraw Hall's plea of guilty were prepared and sent to the prosecutor. In response, the prosecutor sent Hall a copy of a letter he wrote to the Vancouver Columbian dated September 2, 1982, informing the newspaper that Hall was not involved in the "Malaysian Connection".

On September 7, 1982, Hall filed the motion to withdraw his plea of guilty. The trial court denied the motion. On September 13, 1982, the Vancouver Columbian ran an article entitled "Withdrawal of guilty plea in heroin case nixed". The article begins "Gary Lee Hall was not part of a Malaysian–connection heroin ring" and continues to describe the motion to withdraw plea of guilty proceeding including the parties' arguments and the court's ruling.

Hall entered a plea of not guilty to the first degree escape charge. Prior to trial, he moved to dismiss the information on the grounds the charge violated his right to equal protection of the laws. This motion and a subsequent motion to arrest judgment on the same grounds were denied.

The first degree escape trial was held on October 20, 1982. The jury convicted Hall of first degree escape.

Sentence was imposed on October 29, 1982. The court, finding Hall had violated his probation, revoked it. The court sentenced Hall to prison for the controlled substance conviction and the first degree escape conviction. Hall

appealed. Hall's appeals related to the motion to withdraw plea of guilty and to the first degree escape trial were consolidated by the Court of Appeals, Division Two, and certified to this court for review. We now will address the issues.

I

Hall argues the plea bargain agreement was breached by the prosecutor and therefore the court should have granted the motion to withdraw his plea of guilty. The term allegedly not complied with stated "the Prosecutor . . . will make known to the press that [Hall] had no connection with the conspiracy, possession nor delivery of heroin relating to the other defendants in this case". Clerk's Papers, at 3.

The State is obligated to comply with the terms of a plea bargain agreement. *Santobello v. New York,* 404 U.S. 257, 30 L. Ed. 2d 427, 92 S. Ct. 495 (1971); *State v. Tourtellotte,* 88 Wn.2d 579, 584, 564 P.2d 799 (1977). Full and wholehearted compliance is required. *In re Palodichuk,* 22 Wn. App. 107, 110, 589 P.2d 269 (1978).

Courts have recognized that a "petitioner had a right analogous to a contract right once the plea bargain was entered". *Palodichuk,* at 110. *Accord, State v. James,* 35 Wn. App. 351, 355, 666 P.2d 943 (1983). "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello,* at 262. "[P]rosecutorial negation of a plea agreement presents an issue of constitutional magnitude. A plea bargain involves the waiver of several constitutional rights." (Citations omitted.) *In re James,* 96 Wn.2d 847, 849, 640 P.2d 18 (1982).

The appellant's plea of guilty, after discussion in open court of the written terms of the plea bargain, was entered April 16, 1982. Two articles still connecting appellant with the "Malaysian Connection" appeared on August 15 and August 29, 1982, in the Vancouver Columbian.

Clearly, the prosecutor pursuant to the plea bargain

agreement had a duty to notify the press that Hall was not involved with the "Malaysian Connection" ring. And clearly, it would have been better if the press had been notified sooner. However, the press had been notified before the motion to withdraw the plea of guilty was filed and was decided by the court. As noted by the trial court giving its decision from the bench, "a different view might be taken with respect to [the motion] had a request been made to comply specifically with the provision in the plea bargain and some refusal or negligence been shown". Report of Proceedings, at 9. Upon being notified of its omission, the prosecutor promptly complied. We hold there was no breach of the plea bargain agreement.

## II

■ Appellant argues the "conviction of a felony" element of first degree escape, RCW 9A.76.110, requires his previous conviction, for which he was being detained, be constitutionally valid. He argues that his conviction for possession of heroin was invalid because of the prosecutor's breach of the plea bargain agreement. Because we have found no breach of the plea bargain agreement, the prior conviction was constitutionally valid. Even if it were an unconstitutional conviction, we would uphold its use for escape because of our recent holding in *State v. Gonzales,* 103 Wn.2d 564, 693 P.2d 119 (1985). In *Gonzales,* we held that in a prosecution for escape the State is not required to prove the defendant was being detained pursuant to a constitutionally valid conviction. We refused "to permit defendants charged with escape to challenge the legality of their confinement at the escape trial." *Gonzales,* at 567.

## III

Hall argues his constitutional right to equal protection of the laws was violated because RCW 9A.76.110, the general escape statute under which he was charged, has a different culpability element than RCW 72.65.070, the escape statute specifically for state prisoners at work release facilities, with no rational basis for the distinction. We agree. Our

analysis begins with a comparison of the applicability and elements of these two statutes.

RCW 9A.76.110(1) provides: "A person is guilty of escape in the first degree if, being detained pursuant to a conviction of a felony or an equivalent juvenile offense, he escapes from custody or a detention facility." The definition of a detention facility includes a work release facility. RCW 9A.76.010(2)(e). Additionally, case law has engrafted a culpability element, that is, the prosecution must show the defendant "*knew* that his actions would result in leaving confinement without permission." (Italics ours.) *State v. Descoteaux,* 94 Wn.2d 31, 35, 614 P.2d 179 (1980).

RCW 72.65.070 provides: "Any prisoner approved for placement under a work release plan who wilfully fails to return to the designated place of confinement at the time specified shall be deemed an escapee and fugitive from justice, and upon conviction shall be guilty of a felony . . .". "Prisoner" is defined as "a person either male or female, convicted of a felony and sentenced by the superior court to a term of confinement and treatment in a state correctional institution under the jurisdiction of the department [of corrections]." RCW 72.65.010(4). By its language, RCW 72.65.070 applies only to state prisoners approved for work release. In fact, this court has held that state prisoners who escape from work release facilities must be charged under RCW 72.65.070, the more specific statute, because it preempts RCW 9A.76.110's application. *State v. Danforth,* 97 Wn.2d 255, 257–58, 643 P.2d 882 (1982). Unlike the *Danforth* situation, Hall was properly charged under RCW 9A.76.110 because he was not a state prisoner on work release. However, because RCW 72.65.070 applies only to state prisoners on work release and RCW 9A.76.110 applies to all other prisoners on work release, a classification exists.

The critical difference between these two statutes is the culpability element that the prosecutor must prove. To convict under RCW 9A.76.110, the State must prove knowledge. *State v. Descoteaux, supra.* To convict under RCW 72.65.070, the State must prove willfulness.

Hall argues that a difference exists between the culpability elements of knowledge and willfulness. RCW 9A.08-.010(4) equates willfulness and knowledge unless a purpose to impose further requirements plainly appears. As noted above, the Legislature did not explicitly impose a culpability requirement into RCW 9A.76.110, but this court did. *State v. Descoteaux, supra.* The court has also stated willful meant more than knowingly in the escape setting. Willful is equated with "a purposeful act" while knowledge is characterized as a "lack of mental intent requirement." *Danforth,* at 258, 259. Thus, the State in prosecuting escapees from work release facilities has differing burdens of proof depending on whether the prisoner is a state prisoner on work release or any other prisoner on work release.

■■ Hall argues this distinction violates his equal protection rights guaranteed by the fourteenth amendment to the United States Constitution and Const. art. 1, § 12 because it has no rational basis which has a fair and substantial relationship to the object or purpose of the legislation. *Reed v. Reed,* 404 U.S. 71, 30 L. Ed. 2d 225, 92 S. Ct. 251 (1971); *State v. Martinez,* 85 Wn.2d 671, 538 P.2d 521 (1975). "The equal protection clause requires that persons similarly situated with respect to the legitimate purposes of the laws receive like treatment." *In re Knapp,* 102 Wn.2d 466, 473, 687 P.2d 1145 (1984), citing *Harmon v. McNutt,* 91 Wn.2d 126, 130, 587 P.2d 537 (1978). No rational basis exists for the difference in treatment of these similarly situated groups.

Our determination, however, does not invalidate RCW 9A.76.110. In *Descoteaux,* we added the culpability element of knowledge to the statute. Knowledge continues to be the culpability element that must be proven to convict under RCW 9A.76.110 all who fall within its parameters, except those who escape from work release. Those who escape from work release must be shown to have willfully failed to return to be convicted of first degree escape. By applying this culpability requirement, RCW 9A.76.110 and RCW 72.65.070 will be reconciled and a work release prisoner's

right to equal protection of the laws will be safeguarded.

We affirm the trial court's denial of Hall's motion to withdraw his plea of guilty and the trial court's use of the prior conviction as an element of first degree escape. We reverse the first degree escape conviction as violative of equal protection and remand for a new trial.

DOLLIVER, C.J., and UTTER, BRACHTENBACH, DORE, and PEARSON, JJ., concur.

DURHAM, J. (dissenting)—I agree with the majority that there was no breach of the plea bargain. However, I respectfully dissent from the majority's conclusion that the defendant's conviction under RCW 9A.76.110, the general escape statute, violated his right to equal protection of the law. Unlike the majority, I find no difference between the mental state required for conviction under the general escape statute and that required for conviction under RCW 72.65.070, escape from a state work release facility. To the extent that *State v. Danforth,* 97 Wn.2d 255, 643 P.2d 882 (1982) must be read for the proposition that the requisite mens rea for the two statutes are different, I would overrule *Danforth.* As used in the two escape statutes, I find no difference between a "willful" act and an act made with knowledge that it would result in a forbidden consequence. Such artificial distinctions serve only to confuse the trier of fact and, in this case, to subvert the intent of the Legislature.

Historically, the requirement that a defendant's action be willful meant more than a requirement that a defendant act with knowledge of the consequences of his action. Willful, when used in a criminal statute, required that a defendant act with an evil purpose or criminal intent. *United States v. Murdock,* 290 U.S. 389, 394, 78 L. Ed. 381, 54 S. Ct. 223 (1933); *United States v. Illinois Cent. R.R.,* 303 U.S. 239, 82 L. Ed. 773, 58 S. Ct. 533 (1938). The term willful continues to be interpreted to require such a heightened degree of culpability in the context of some statutes. *See, e.g.,*

*United States v. Bishop,* 412 U.S. 346, 359–60, 36 L. Ed. 2d 941, 93 S. Ct. 2008 (1973).

However, this is no longer the general rule. The meaning of the term willful has come to vary widely, depending upon its context. *State v. Bauer,* 92 Wn.2d 162, 595 P.2d 544 (1979); *Spies v. United States,* 317 U.S. 492, 87 L. Ed. 418, 63 S. Ct. 364 (1943). Prior to the enactment in 1975 of the revised criminal code, willful was generally interpreted to mean "an act committed intentionally, deliberately and/ or designedly as distinguished from one done accidently, inadvertently, innocently and/or with lawful excuse." *State v. Oyen,* 78 Wn.2d 909, 916, 480 P.2d 766 (1971); *see also State v. Russell,* 73 Wn.2d 903, 907, 442 P.2d 988 (1968). While certainly distinct from the historical definition requiring a showing of evil purpose, this definition of willful left unclear whether an act done with knowledge of its probable consequences would be considered to be willful.

Dissatisfaction with the confused state of the law concerning the mens rea requirements for a showing of criminal action led to the adoption of § 2.02, General Requirements of Culpability of the Model Penal Code. The drafters identified four levels of culpability into which all mental states were to be classified: (1) purpose, (2) knowledge, (3) recklessness, and (4) negligence. Model Penal Code § 2.02 (Tent. Draft 4, 1955). They identified a trend which equated the term willful with the second level of culpability—knowledge—and codified that trend as a presumption. Penal Code comments, at 130. An exception to this presumption is applied when "a purpose to impose further requirements plainly appears." Penal Code § 2.02(8).

In 1975, the Legislature adopted the provisions of the Model Penal Code identifying the four levels of culpability and establishing the definition of willful as the equivalent of acting with knowledge "unless a purpose to impose further requirements plainly appears." Laws of 1975, 1st Ex. Sess., ch. 260, § 9A.08.010, p. 826. The Legislature specifically directed that these general provisions of the revised

criminal code were to apply to other defenses defined in Title 9A or any other statute, unless Title 9A or the other statute provides otherwise. RCW 9A.04.010(2). Thus, RCW 9A.08.010 applies to RCW 72.65.070 even though that statute was originally enacted in 1967.

If this court is to interpret the term "willful" as used in RCW 72.65.070 as different from "acting with knowledge", we must find some positive indication by the Legislature that such a heightened degree of culpability is required for the crime. In *Danforth,* the court offered no such indication of legislative intent on which to base its conclusion. Furthermore, the differences between the circumstances under which a defendant may escape from a detention facility and those under which a defendant may escape from a work release facility do not require that the mens rea differ for the two acts. There is a difference between going "over the wall" of a detention facility and failing to return to a work release facility. However, if a defendant acts, knowing that his actions will result in the forbidden consequence, he should be found guilty under either circumstance. The difference is in the evidence required to prove the mens rea, not in the mens rea itself. Evidence that a defendant left a guarded detention facility may, in itself, be sufficient for a jury to infer that the defendant acted with knowledge that his actions would result in leaving a detention facility without permission. However, evidence that a defendant failed to return to a work release facility is not, in and of itself, sufficient for a jury to infer that a defendant acted with knowledge that his action would result in a failure to return to the place of confinement at a designated time. Once a defendant has been admitted to a hospital emergency room or had his car break down, the defendant may know that he will not be able to return to the detention facility on time but will not have acted with knowledge of that consequence when he stepped off a curb in front of a bus or climbed into a car about to malfunction. This distinction between the circumstances under which one may be found guilty of escape from custody and those under which one may be

found guilty of escape from a work release program exists and should be identified in a court's instructions to the jury. However, this distinction does not establish a different mens rea under the work release escape statute than that required under the general escape statute.

I would affirm the judgment and sentence.

ANDERSEN and CALLOW, JJ., concur with DURHAM, J.

Reconsideration denied November 26, 1985.