IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-003-07




 

JOSHUA JOEL MOORE, Appellant



v.



THE STATE OF TEXAS
 




ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE SECOND COURT OF APPEALS


MONTAGUE COUNTY




 Price, J., delivered the opinion for a unanimous Court.


O P I N I O N


 The appellant was indicted for the offense of manufacturing methamphetamine--four
grams or more, but less than 200 grams. He pled guilty pursuant to a plea agreement with the
State. The trial court sentenced the appellant to forty years' confinement. We granted the
appellant's petition for discretionary review to determine whether the trial court accepted and
followed an enforceable plea-bargain agreement, such that the appellant did not have the right
to withdraw his guilty plea. We hold that the plea agreement was proper, and that the trial court
committed no error in enforcing the plea.

FACTS AND PROCEDURAL POSTURE

Guilty Plea Proceedings

 The appellant entered his guilty plea on March 14, 2006. The plea was predicated on
a multi-faceted plea agreement with the State. The agreement required that Moore plead guilty
to the charge. The State agreed to a six-week postponement of the sentencing so that the
appellant could prepare for his term of incarceration. The appellant promised to appear for his
sentencing and to refrain from committing any criminal offense during his six-week reprieve. 
On condition that the appellant abide by these terms, the State offered to recommend a
punishment of twenty-five years. Should the appellant fail to abide by these terms, however,
the agreement expressly provided that the State would not recommend a punishment; it would
become an open plea for the trial court to determine the sentence based on the full punishment
range, up to life in prison. After discussing the terms of the plea agreement in open court, the
trial judge asked the appellant whether he still wished to enter a plea of guilty, to which the
appellant responded in the affirmative. The judge accepted appellant's guilty plea, as well as
the terms of the plea agreement.

Sentencing Proceedings

 The sentencing hearing commenced on April 24, 2006. At that time, the State presented
a presentence-investigation report alleging that the appellant had committed an assault, in
violation of the plea agreement. In light of this accusation, the trial court postponed the
sentencing hearing until May 8, 2006.

 At the May 8th hearing, the State presented evidence that the appellant had, in fact,
committed an assault during his six-week reprieve. Accordingly, the State informed the trial
court that, pursuant to the plea agreement, the State would refrain from making any sentencing
recommendation. Despite the appellant's request that the trial court assess the twenty-five-year sentence that the State had originally agreed to recommend, the trial court sentenced him
to forty years' incarceration. 

On Appeal

 In an unpublished opinion, (1) the court of appeals reversed the trial court's judgment,
asserting that the trial court erred by not allowing the appellant the opportunity to withdraw his
guilty plea. The court of appeals reasoned that the plea bargain between the State and the
appellant contained two conditions precedent upon the plea agreement. "In other words, if [the
appellant] did not satisfy the two conditions precedent, the State had no duty to perform its
promise of recommending a twenty-five year sentence," (2) and the appellant, in turn, had no duty
to perform his promise to plead guilty. The court of appeals relied heavily on our opinion in
Perkins v. Court of Appeals for Third Supreme Judicial Dist. of Tex. (3) in its determination
that there was not a proper plea bargain between the appellant and the State. The court of
appeals ruled that, since the State withdrew its promise to recommend twenty-five years, the
appellant should have the right to withdraw his guilty plea. That ruling was based on the
following: 

Plea bargain agreements arise when a defendant agrees to plead guilty . . . in
exchange for a reduction in the charge, a promise of sentencing leniency, a
promise of a recommendation from the prosecutor to the trial judge as to
punishment, or some other concession by the prosecutor that he will not seek
to have the trial judge invoke the full maximum implementation of the judge's
conviction and sentencing authority. (4)


In its petition for discretionary review, the State argues that there was a bona fide plea
agreement between the appellant and the State and that it was the appellant's breach of the
terms of the plea agreement that released the State from its promise to recommend a twenty-five-year sentence. We granted the State's petition for discretionary review in order to
determine whether the trial court accepted and followed an enforceable plea bargain
agreement, such that the appellant did not have the right to be permitted to withdraw his guilty
plea. (5) We agree with the State and hold that there was an enforceable plea agreement, which
the trial court did not err in following.

ANALYSIS

 Plea agreements continue to be a vital part of our criminal-justice system. Like many
aspects of criminal law, however, plea agreements have become more complex in recent years. 
Historically, plea agreements have involved the defendant pleading guilty in exchange for a
lesser sentence. With as much as ninety percent of all criminal cases resolved via plea
agreements, (6) charge reductions, dismissal of charges, or reduced sentences are commonplace. 
Plea agreements have also included the following provisions: an agreement that the State will
dismiss charges against another party; (7) an agreement that the defendant will supply information
to the police; (8) an agreement that the defendant will testify against someone else; (9) and even an
agreement by the prosecutor to make a public announcement to protect the defendant's
reputation. (10)

 It is safe to conclude that plea agreements may contain a variety of stipulations and
assurances, depending on the desires of the State and the defendant. In Mabry v. Johnson, (11)
the United States Supreme Court noted that "plea agreements are consistent with the
requirements of voluntariness and intelligence-because each side may obtain advantages when
a guilty plea is exchanged for sentencing concessions, the agreement is no less voluntary than
any other bargained-for exchange." (12) In fact, the terms of the plea agreement are left solely
to "the parties who are dealing at arm's length. This Court will not interfere with those terms
unless they appear to be manifestly unjust." (13) 

 Based, in part, on the aforementioned notions of voluntariness and intelligence, this
Court has held that plea agreements are generally contractual arrangements between the State
and defendant. (14) In Ex parte Williams, we held, "When a defendant agrees to the terms of a
plea bargain agreement he is deemed to have entered into the agreement knowingly and
voluntarily unless he shows otherwise. In effect, he becomes a party to a 'contract'." (15) 
Consistent with general contract principles, then, both the State and the defendant should be
given great latitude in crafting plea agreements. (16)

 Once a plea agreement is reached between the State and the defendant, the trial court
must approve the terms of the agreement. (17) Thus, the contractual nature of a plea agreement
does not become binding until the trial court accepts the proffered agreement. For example,
in Dorsey v. State, the court of appeals rejected the State's assertion that a plea agreement
existed. There, the State and the defendant executed a document entitled "Agreement Memo,"
which contemplated a specific sentence recommendation by the State in exchange for the
defendant's agreement to work diligently for the police and abide by other rules and
conditions. However, this "Agreement Memo" was never filed with the trial court and, in fact,
at the plea hearing the parties stated that there was no plea agreement. Thus, the trial judge
never approved of any plea agreement. The court of appeals held that, since the trial court had
not approved the "Agreement Memo," no proper plea agreement existed to bind either party. (18) 
Conversely, we declared the plea agreement binding in Ex parte Williams because the trial
court announced that it would be bound by the agreement. (19)

 Once a plea agreement is finalized and the trial court binds itself to the terms, both the
defendant and the prosecutor are entitled to the benefit of the agreement. At the same time,
both the defendant and the prosecutor are also bound to uphold their ends of the bargain. As
this Court stated in Ex parte Williams, once the trial court declares that it will accept a plea
agreement, "the State is bound to carry out its side of the bargain. Likewise, the defendant is
bound to carry out his side of the bargain." (20) Ordinarily, when one side fails to abide by the
plea agreement, two potential remedies exist. First, pertaining mainly to the defense, a plea
may be withdrawn. Second, the non-breaching party may demand specific performance of the
remainder of the plea agreement. (21) The application of these remedies for breach of a plea
agreement has been illustrated in multiple holdings.

 The plea agreement in Ex parte Williams, perhaps most analogous to the facts before
us today, contemplated that if Williams paid his fines before sentencing, the State would
recommend probation. When Williams failed to pay the fines, even after a four-week
extension was granted, the State declined to recommend probation. The trial court proceeded
to sentence Williams to ten years' imprisonment. (22) The court of appeals ruled that the plea
agreement between the State and Williams was proper and the trial court was correct in
refusing to allow Williams to withdraw his guilty plea since Williams had not upheld his part
of the agreement. Essentially, the plea agreement stated that if Williams did not pay the fines
in time, the State would be relieved of its obligation to recommend probation, and instead, the
trial court would sentence Williams to up to ten-years' incarceration. The trial court,
pursuant to the terms of the plea agreement, handed down a ten-year sentence.

 Similarly, in Swanson v. State, (23) the defendant signed a plea agreement in which the
State agreed to dismiss the indictment in exchange for certain information pertaining to more
culpable individuals. As part of the plea agreement, if Swanson was able to provide some, but
not all, of the requisite information, the State would recommend a seven-year prison sentence. 
When Swanson was unable to give adequate information, true to its promise, the State
recommended a seven-year sentence, and the trial court sentenced Swanson accordingly. The
court of appeals ruled that since Swanson failed to perform his end of the bargain, the trial
court did not err in sentencing him to prison.

 In Brunelle v. State, the defendant was indicted for capital murder. The State
prosecuted him for the lesser offense of murder and offered a life sentence, which was
accepted, in exchange for the defendant's agreement to testify against a co-defendant. Three
years later, when Brunelle refused to testify, the State essentially withdrew the plea agreement
by re-indicting him for capital murder. The court of appeals, in upholding the re-indictment,
reasoned, "If specific performance is impossible, then the parties must be returned to the
positions they occupied before the plea bargain." (24) Thus, since the State could not force
Brunelle to testify, and there was no provision in the plea agreement that contemplated a
specific remedy if he chose not to testify, the State was permitted to withdraw from the plea
agreement. Here, by contrast, the agreement between the State and the appellant expressly
contemplated what the remedy would be in the event the appellant should fail to satisfy part of
the bargain.

 The court of appeals in this case believed that the plea agreement between the State and
the appellant simply consisted of the appellant agreeing to plead guilty in exchange for a
sentencing recommendation of twenty-five years by the State. But the plea agreement in
Perkins, which the court of appeals relied on, was much simpler than the one before us in this
case. In Perkins, the plea agreement involved only the defendant's guilty plea in exchange for
a sentencing recommendation of twenty-five years from the State. Thus, in our analysis, we
gave a very general definition of a plea agreement, bearing in mind the simple plea agreement
at issue. We stated, "We find that it is sufficient for our purposes to point out that [a plea
agreement] is usually defined as . . . a process . . . whereby the accused agrees to plead guilty
. . . in exchange for . . . a promise of a recommendation from the prosecutor to the trial judge
as to punishment . . . ." (25)

 Extrapolating from this definition, the court of appeals in this case improperly reasoned
that the agreement contained two conditions precedent: that the appellant appear at the
sentencing hearing in six weeks and refrain from committing a criminal offense during the
interim. If the facts of this case were similar to those in Papillion v. State, (26) we might agree
with the court of appeals's assessment. However, the record clearly shows that the six-week
reprieve and the covenants to show up for the sentencing hearing and to refrain from
committing a criminal offense were all part of the negotiation process and the finalized plea
agreement. Moreover, the consequence of not abiding by the two covenants was also pre-negotiated and expressly incorporated into the plea agreement. It was not the trial judge who
imposed these requirements on the appellant; the appellant and the State mutually agreed to
these terms. Since this plea agreement contained more than a simple guilty plea in exchange
for a sentencing recommendation, the court of appeals should not have relied so heavily on
Perkins.

 The plea agreement in this case was far more complex and included an express
agreement with respect to the remedy in the event of a partial breach. The record shows that
it was the appellant, not the State, who benefitted from the six-week deferment of sentencing. 
It is only reasonable that the State should obtain something in return, namely, assurances by
the appellant that he would appear for his sentencing hearing and that he would not commit a
crime during the interim. Both of these assurances benefitted the State and were intelligently
negotiated. In order to assure that the appellant would abide by these terms, the State and the
appellant expressly agreed that if the appellant should fail to appear at the sentencing hearing
or committed a criminal offense, then the State would be relieved of its duty to recommend
a twenty-five-year sentence. It was not contemplated, however, that the appellant should then
be relieved of his ultimate agreed-upon obligation to enter a guilty plea. Instead, the agreement
itself provided for an appropriate remedy. The parties used the term "open plea" at the plea
bargain hearing, essentially acknowledging that the guilty plea would become open as to
sentencing implications. (27) Moreover, bearing in mind our holding in Ex parte Williams, we
note that the trial court did not pressure the appellant into accepting the terms of the
agreement; the agreement was left solely up to the appellant and the State. (28) 

 Consistent with the requirement of a voluntary and intelligent agreement elucidated in
Mabry, each side obtained the advantages sought from the negotiating process. (29) The record
reflects that the appellant knowingly and voluntarily agreed to the plea agreement. The record
also clearly shows that the trial court expressly approved the agreement, accepted the
appellant's guilty plea, and found him guilty, a requirement from our holding in Dorsey. (30) Part
of the negotiated agreement included an express remedy in the event that the appellant should
breach the agreement partially or totally. Therefore, when the appellant breached that part of
the plea agreement for which a remedy had been expressly agreed upon, the State was released
from its obligation to recommend a twenty-five year sentence. Instead, pursuant to the
agreement, the State was permitted to, and did, stay silent on the sentencing recommendation.

CONCLUSION

 We hold that the State's refusal to recommend a twenty-five year prison sentence
comported with the terms of the enforceable plea agreement between the appellant and the
State. Plea agreements are, in general, contractual arrangements between the defense and the
State. (31) We should afford great latitude to the defense and the State in formulating a plea
agreement that is acceptable to both parties. In this particular case, both parties agreed on the
appropriate remedy in the event the appellant should breach the agreement.

 The court of appeals erred in determining that the plea agreement consisted solely of
the appellant's guilty plea in exchange for a twenty-five year sentence recommendation from
the State. Both parties should have been allowed to, and did, negotiate a personalized plea
agreement so that each party was content with the terms of the agreement. Absent facts to the
contrary, we hold that the terms of the plea agreement in this case, including the six-week
deferment of sentencing, covenants to appear at the sentencing hearing and not commit a
criminal offense during the six-week period, and the potential consequences for breaching
either covenant, were knowingly and voluntarily agreed upon by the appellant and the State. 
There is no cause to set it aside. Accordingly, we reverse the judgment of the court of appeals
and reinstate the trial court's judgment.


Delivered: November 19, 2007 

Publish
1. Moore v. State, No. 2-06-168-CR (Tex. App.--Fort Worth, Feb. 7, 2007).
2. Id., slip op. at 4-5.
3. 738 S.W.2d 276 (Tex. Crim. App. 1987).
4. Moore, supra, at 5, citing Perkins, supra, at 282.
5. See Tex. R. App. P. 66.3(c).
6. Brady v. United State, 397 U.S. 742, 752 n.10 (1970).
7. Torrez v. State, 925 S.W.2d 361 (Tex. App.--Fort Worth 1996, no pet.).
8. Dorsey v. State, 55 S.W.3d 227 (Tex. App.--Corpus Christi 2001, no pet.).
9. Brunelle v. State, 113 S.W.3d 788 (Tex. App.--Tyler 2003, no pet.).
10. State v. Hall, 706 P.2d 1074 (Wash. 1985).
11. 467 U.S. 504 (1984).
12. Id. at 508, citing Corbitt v. New Jersey, 439 U.S. 212, 219-20, 222-23 (1978); Bordenkircher
v. Hayes, 434 U.S. 357, 363 (1978); Blackledge v. Allison, 431 U.S. 63, 71 (1977); Santobello v. New
York, 404 U.S. 256, 260-61 (1971).
13. Ex parte Williams, 637 S.W.2d 943, 948 (Tex. Crim. App. 1982).
14. Ortiz v. State, 933 S.W.2d 102 (Tex. Crim. App. 1996); Brunelle v. State, supra, at 790.
15. Ex parte Williams, supra, at 947, citing Jones v. Estelle, 584 F.2d 687 (5th Cir. 1978).
16. See id. at 948 (stating that we will not interfere with the terms of a plea agreement "unless they
appear to be manifestly unjust").
17. Dorsey v. State, supra, at 232.
18. Id.
19. Ex parte Williams, supra.
20. Id. at 947.
21. Perkins v. Court of Appeals for Third Supreme Judicial Dist., supra, at 283.
22. Ex parte Williams, supra, at 944.
23. 692 S.W.2d 548 (Tex. App.--Houston [14
th] 1985, no pet.).
24. Brunelle v. State, supra, at 790.
25. Perkins v. Court of Appeals for Third Supreme Judicial Dist., supra, at 282 (emphasis added).
26. 908 S.W.2d 621 (Tex. App.--Beaumont 1995, no pet.). The trial judge, after accepting the plea
agreement and guilty plea, admonished the defendant and then told him that if he failed to have his
presentence investigation completed or to show up at the sentencing hearing the trial judge would not be
bound by the plea agreement. When the defendant failed to adhere to one of the conditions, the judge
assessed a jail sentence longer than that agreed to in the plea agreement. The court of appeals ruled that
the trial judge improperly placed two conditions on the plea agreement that were "not part of any
negotiations between the State or [the appellant]." Id. at 624.
27. 

 That this remedy was specifically contemplated as a term of the plea bargain agreement is
illustrated by the following colloquy from the plea proceeding:


[The Prosecutor]: . . . [I]f he is given that time and he does not return on the date
ordered to appear back here for sentencing by the Court, then his plea is considered an
open plea and the Court will then have the full punishment range available, up to life in
prison.


THE COURT: And that would also -- does that also include if the defendant
commits another --


[The Prosecutor]: That's correct.


THE COURT: -- a criminal offense during that period of time?


[The Prosecutor]: That's correct.


THE COURT: The State then would not make a recommendation, but it would
be an open plea?


[The Prosecutor]: It would be an open plea, yes.


THE COURT: Is that you-all's understanding of the plea bargain agreement?


[Defense Counsel]: Yes.


THE COURT: And, Mr. Moore, did you understand that to be the agreement?


[The Appellant]: Yes.


THE COURT: Do you have any questions about that?


[The Appellant]: No.


* * * 


THE COURT: The Court advises the defendant that the Court will approve the
plea bargain agreement as stated on the record. . . . Do you still wish to enter a plea of
guilty?


[The Appellant]: Yes.


THE COURT: All right. The Court accepts your plea of guilty.
28. Ex parte Williams, supra, at 948.
29. Mabry v. Johnson, supra, at 508.
30. Dorsey v. State, supra, at 232.
31. Ortiz v. Texas, supra; Brunelle v. State, supra, at 790; Ex parte Williams, supra, at 947.