IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 34529-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| TYLOR T. BUTTOLPH, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Tylor Buttolph appeals his conviction for escape from community custody. The statute defining this crime requires the defendant to have acted "willfully." RCW 72.09.310. Mr. Buttolph argues the trial court erred when it refused his proposed jury instruction, which equated willfulness with purpose, and instead gave an instruction equating willfulness with knowledge. We conclude the trial court properly instructed the jury and affirm.

## FACTS

In 2015, Mr. Buttolph was serving an 18-month term of community custody as part of a felony sentence. One of his community custody conditions was to report to and be

available for contact with his assigned community corrections officer (CCO). His assigned CCO was Jeremy Taylor.

On May 5, 2015, Mr. Buttolph met with CCO Taylor at CCO Taylor's office. At that meeting, CCO Taylor instructed Mr. Buttolph to report back to him on May 19. CCO Taylor wrote this date on the back of a business card and gave it to Mr. Buttolph.

On May 19, Mr. Buttolph did not report for the supervision meeting. He did not contact CCO Taylor either before or at any time after the scheduled meeting. On May 21, CCO Taylor attempted to contact Mr. Buttolph at his residence, but was unable to do so. A warrant was issued for Mr. Buttolph's arrest, and he was arrested on June 3.

The State charged Mr. Buttolph with escape from community custody under RCW 72.09.310. At trial, Mr. Buttolph proposed the following jury instruction: "Willful action, as required by these instructions, requires a purposeful act." Clerk's Papers (CP) at 23. Mr. Buttolph argued that construing "willfulness" in RCW 72.09.310 as only requiring knowledge would make it a crime for a person to miss a community custody meeting even if the person had a transportation or emergency medical issue. He argued *State v. Danforth*, 97 Wn.2d 255, 643 P.2d 882 (1982), which concerned a person's willful failure to return from work release, supported his position.

2

The trial court denied Mr. Buttolph's proposed instruction, reasoning that it differed from the Washington Pattern Jury Instructions (WPICs). Instead, the court gave the following instruction, consistent with WPIC 10.05: "A person acts willfully as to a particular fact when he or she acts knowingly as to that fact." CP at 36; *see* 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 10.05, at 231 (4th ed. 2016).

The jury found Mr. Buttolph guilty as charged. Mr. Buttolph appeals.

## ANALYSIS

A.    ESCAPE FROM COMMUNITY CUSTODY MENS REA REQUIREMENT

Mr. Buttolph argues the trial court erred when it declined to give his proposed jury instruction defining "willful action" as a purposeful act.

Jury instructions are proper when they correctly inform the jury of the applicable law. *State v. Willis*, 153 Wn.2d 366, 370, 103 P.3d 1213 (2005). This court reviews alleged errors of law in jury instructions de novo. *Id.*

An inmate in community custody is guilty of escape from community custody if he or she "*willfully* discontinues making himself or herself available to the department for supervision by making his or her whereabouts unknown or by failing to maintain contact

3

with the department as directed by the community corrections officer." RCW 72.09.310

(emphasis added).

Neither RCW 72.09.310 nor the chapter defines "willfully," nor has any court

interpreted this section. The mens rea requirement of "willfulness" has been defined in

numerous ways depending on its context. *See State v. Bauer*, 92 Wn.2d 162, 167, 595

P.2d 544 (1979); *Crosswhite v. Dep't of Soc. & Health Servs.*, 197 Wn. App. 539, 550

n.3, 389 P.3d 731 (collecting definitions), *review denied*, 188 Wn.2d 1009, 394 P.3d 1016

(2017). In 1975, the legislature enacted the Washington Criminal Code, Title 9A RCW,

which provided that:

> Requirement of Wilfulness[1] Satisfied by Acting Knowingly. A
> requirement that an offense be committed wilfully is satisfied if a person
> acts knowingly with respect to the material elements of the offense, unless a
> purpose to impose further requirements plainly appears.

*See* LAWS OF 1975, 1st Ex. Sess., ch. 260, *codified at* RCW 9A.08.010(4).[2] This statute

represented a change from the preexisting common law, under which willfulness

---

[1] Older statutes and cases often use the formerly-preferred "wilful." *Crosswhite*, 197 Wn. App. at 551 n.4.

[2] Although the escape from community custody statute is codified in chapter 72.09 RCW, the general provisions of the Washington Criminal Code—which include the general requirements of culpability—are also applicable to offenses defined in other statutes, unless the other statute specifically provides otherwise. *See* RCW 9A.04.090.

4

generally required more than knowledge. *See State v. Hall*, 104 Wn.2d 486, 495, 706 P.2d 1074 (1985) (Durham, J., dissenting).

When construing the meaning of "willfulness" in a criminal statute, this court's focus is on the legislative context. *Bishop v. City of Spokane*, 142 Wn. App. 165, 171, 173 P.3d 318 (2007). In *Bishop*, we considered the statute prohibiting the obstruction of a law enforcement officer. *Id.* The statute had previously contained a "knowledge" requirement, but the legislature amended it in 1994, substituting a requirement of "willfulness." *Id.*

We concluded that the amendment from "knowing" to "willful" did not "plainly" indicate a change in the mens rea requirement. *Id.* We reasoned that the legislature is presumed to know the statutory scheme, including the provision in RCW 9A.08.010(4), which equates "willfulness" with "knowledge." *Id.* We further reasoned that if the legislature "had intended a more stringent mental element, it would have stated that purpose directly." *Id.*

Similarly, in this case, when the legislature enacted the escape from community custody statute in 1988, it presumably knew that RCW 9A.08.010(4) equated willfulness with knowledge. *See* LAWS OF 1988, ch. 153, § 6. Thus, it would have stated its purpose directly if it had intended a greater mens rea requirement.

5

Nevertheless, Mr. Buttolph argues the escape from community custody statute clearly demonstrates a purpose to impose a greater mens rea requirement because without one, a person could be found guilty if he or she missed a supervision meeting due to a medical emergency or car accident. In support of this contention, he relies on *Danforth*, 97 Wn.2d 255.

In *Danforth*, two work release inmates resided in a work release center in Spokane. *Id.* at 256. One day, they became intoxicated and later woke up in Montana. *Id.* Two weeks later, they were apprehended in Kansas, were returned to Washington, and were charged with escape under RCW 9A.76.110. *Id.*

The issue on appeal was whether they were properly charged. *Id.* at 257. In addition to the general escape statute, Washington also had a statute at the time that made it a crime to willfully fail to return to a work release program. *Id.* That statute provided that "[a]ny prisoner approved for placement under a work release plan who wilfully fails to return to the designated place of confinement at the time specified shall be deemed an escapee." *Id.* (quoting former RCW 72.65.070 (1967)).[3] Because both statutes applied to

---

[3] The failure to return to work release statute was enacted in 1967, which was when "willfulness" was generally understood to mean something more than "knowledge." *See* LAWS OF 1967, ch. 17, § 7; *Hall*, 104 Wn.2d at 495 (Durham, J., dissenting).

6

the individuals' conduct, the question on appeal was whether work release inmates could also be prosecuted under the general escape statute. *Id.*

Our Supreme Court held that they could not, and that the specific failure to return to work release statute preempted prosecutions under the general escape statute for the defendants' behavior. *Id.* at 258. The court further held that although the general escape statute only required a knowledge mens rea, the "willful" requirement in the failure to return to work release statute required more than a knowledge mens rea. *Id.* The court reasoned that a "purposeful" mens rea was required so as not to criminalize the failure to return to a specific place of custody "because of a sudden illness, breakdown of a vehicle, etc." *Id.* Preventing sudden illnesses or car accidents from resulting in convictions, the court concluded, was a valid purpose for it to impose a greater mens rea requirement for this particular statute. *See Hall*, 104 Wn.2d at 492-93 (commenting on *Danforth*).

However, this same logic does not apply to RCW 72.09.310. The reason why the *Danforth* court recognized a greater mens rea requirement with the former statute was because the temporal component for what constituted an "escape" was very strict—the person was deemed an escapee if he or she "fail[ed] to return to the designated place of confinement *at the time specified*." Former RCW 72.65.070 (emphasis added). Thus, if a

7

person had an emergency and did not return to the work release center on time, he or she was guilty.

In contrast, the temporal component for what constitutes an "escape" under RCW 72.09.310 is not strict. Under this statute, a person is deemed an escapee if he or she "discontinues making himself or herself available . . . by making his or her whereabouts unknown," or fails "to maintain contact with the department." RCW 72.09.310. Thus, if a person has a medical emergency or a car accident, the person can avoid criminal liability by contacting the department and making his or her whereabouts known. Because RCW 72.09.310 does not have a strict temporal component, a purpose to impose a greater mens rea requirement does not plainly appear here, as it did in *Danforth*.

Accordingly, we hold that the "willfulness" requirement in RCW 72.09.310 is satisfied by a person acting knowingly with respect to the material elements of the crime. The trial court did not err in denying Mr. Buttolph's proposed jury instruction.

B.     SUFFICIENCY OF THE EVIDENCE

Mr. Buttolph also argues the State's evidence was insufficient to convict him for escape from community custody. He argues that the evidence was insufficient because there was no evidence he acted purposefully. As discussed above, RCW 72.09.310 does

8

not require proof that the defendant acted purposefully. Because Mr. Buttolph bases his challenge to the sufficiency of the evidence on his prior argument that we have rejected, we need not address this argument.

### C.  APPELLATE COSTS

Mr. Buttolph asks this court to decline to impose appellate costs in its decision terminating review on the basis of his indigency.

An appellate court has discretion to require a convicted defendant to pay appellate costs to the State. *See* RCW 10.73.160(1); RAP 14.2. Generally, "the party that substantially prevails on review" will be awarded appellate costs, unless the court directs otherwise in its decision terminating review. RAP 14.2. An appellate court's authority to award costs is "permissive," and a court may, pursuant to RAP 14.2, decline to award costs at all. *See State v. Nolan*, 141 Wn.2d 620, 628, 8 P.3d 300 (2000). Lately, we have exercised our discretion to deny the State an award of appellate costs if the defendant establishes he or she lacks the current or likely future ability to pay those costs.

The State asks this court to "only impose appellate costs in conformity with RAP 14.2 as amended." Br. of Resp't at 16. It is unclear from this statement whether or not the State intends to seek appellate costs.

9

No. 34529-7-III
*State v. Buttolph*

On June 10, 2016, this court issued a general order relating to defendants' requests to deny cost awards when the State substantially prevails on appeal. If inability to pay is a factor alleged to support the defendant's request, as it is here, the general order requires defendants to file a report as to continued indigency with this court no later than 60 days after they file their opening briefs. Mr. Buttolph has not complied with this requirement.

Because Mr. Buttolph has not complied with this court's general order, the record is insufficient for us to determine if he has the current or likely future ability to pay appellate costs. In the event the State files a cost bill with this court, Mr. Buttolph may object. In that case, we defer this issue to our commissioner. *See* RAP 14.2.

Affirmed.

Lawrence-Berrey, J.

WE CONCUR:

Fearing, C.J.

Siddoway, J.

10